WETZEL, APPELLEE, *v.* WEYANT, APPELLANT.

(No. 74-579—Decided February 19, 1975.)

*Mr. John T. Stahl*, for appellee.
*Messrs. Finn, Manahan & Pietrykowski* and *Mr. David M. Mohr*, for appellant.

HERBERT, J. Appellant's contentions, as set forth in the above statement of facts, have been previously ruled upon by this court. Appellant's success in this appeal would necessitate the overruling of many prior cases upon the question[1]; his second, and controlling, proposition of law urges us to so hold. The most recent of these decisions was handed down by this court only four years ago, and both the instant appellant's arguments were discussed and rejected therein.

As stated in *Seeley* (26 Ohio St. 2d 61), at page 72, the judicial guide-line of *stare decisis* is not the sole precept which causes us to adhere to existing law in this case. It must also be noted that the current interpretation of R. C. 2305.15 has remained unchanged by the General Assembly since at least 1947,[2] the year in which *Common-*

---

[1] See *Stanley* v. *Stanley* (1890), 47 Ohio St. 225, 24 N. E. 493; *Commonwealth Loan Co.* v. *Firestine* (1947), 148 Ohio St. 133, 73 N. E. 2d 501; *Couts* v. *Rose* (1950), 152 Ohio St. 458, 90 N. E. 2d 139; *Meekison* v. *Groschner* (1950), 153 Ohio St. 301, 91 N. E. 2d 680; *Seeley* v. *Expert* (1971), 26 Ohio St. 2d 61, 269 N. E. 2d 121.

[2] As even a casual reading of the numerous and studiously prepared opinions which have been written and adopted by ·our learned predeces-

*wealth Loan* (148 Ohio St. 133), was announced. Furthermore, statutes of limitation are a legislative prerogative and their operation and effect are based upon important legislative policy. See *Wyler* v. *Tripi* (1971), 25 Ohio St. 2d 164, 172, 267 N. E. 2d 419. The Court of Appeals properly interpreted R. C. 2305.15, as it has been construed by this court to date, and its judgment is affirmed.

*Judgment affirmed.*

O'NEILL, C. J., CORRIGAN, STERN, W. BROWN and P. BROWN, JJ., concur.

CELEBREZZE, J., dissenting. The majority states that the words[3] of R. C. 2305.15 demand the result announced in their opinion; that the General Assembly has had ample time to change the law, and has not (our action would usurp

---

sors on this court will show, the dissent's interpretation of this statute is simply an exercise in judicial legislation.

When the dissent states that the result for which it has opted is the one "so clearly intended," it either disregards or has overlooked the legislative history of this enactment.

In 1853, the General Assembly enacted the forerunner of R. C. 2305.15, and the language was practically identical to that which exists today. 51 Ohio Laws 57, Section 21. At the same session, the General Assembly provided that an attempt to commence an action constituted its commencement, so long as service of process was accomplished within 60 days. 51 Ohio Laws 57, Section 20. (The portion of Civ. R. 3 quoted in the dissent merely extends that 60-day period to one year.) The 60-day period was likely considered quite short in that time of undeveloped ability to travel and communicate over distances, hence the disjunctive "or" between "depart" and "abscond or conceal," and between "absence" and "concealment."

Short of constitutional impingement, and none is presented to us, 122 years of nearly identical statutory language, buttressed by five consistent opinions from this court, should be more than enough to neutralize a temptation to rewrite the statute to better suit the facts at hand.

[3]"* * * The notion that because the words of a statute are plain, its meaning is also plain, is merely pernicious oversimplification. * * *" Frankfurter, J., dissenting in *United States* v. *Monia* (1943), 317 U. S. 424, 431.

the legislative function) ; that a long line of opinions supports this result and should not be overturned; and that important legislative policy would be frustrated were we to change.

Those are indeed weighty considerations. However, upon studying the facts before us, and the probable continuing consequences of this decision, I am reminded of a famous quote.

Justice Oliver Wendell Holmes, in The Path of the Law, 10 Harv. L. Rev. 457, 469 (1897), wrote:

"* * * It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past. * * *"

While Holmes was referring to the common law, that proposition applies equally well to statutes which have outlived their usefulness.

R. C. 2305.15 was enacted to avoid the harsh result of barring a meritorious claim through operation of a statute of limitations, merely because the claimant was prevented from timely bringing an action by the absence from the state or concealment of the prospective defendant to prevent the service of summons.

With that purpose in mind, there is an unexpressed premise in R. C. 2305.15. When the statute speaks of the party absconding or concealing himself, it is for the purpose of allowing the expiration of the statute to prevent the action from being brought against him; if his temporary departure has that same effect he should not be allowed to benefit from it. However, under the present state of the law, that absence never has the effect of preventing the action from being brought.

Civ. R. 3(A) provides that:

"A civil action is commenced by filing a complaint with the court; if service is obtained within one year from such filing." (See, also, R. C. 2305.17.)

The presence or absence in the state of the person

against whom the action is filed should not affect the timeliness of the complaint. Here, appellee did not even contact an attorney until one day *after* the statute of limitations had run. Appellant's absence or presence in the state could not possibly have had any bearing upon that delay.

However, this argument, and those relating to Civ. R. 4.3 (out-of-state service), and Civ. R. 4.6(D) (service by ordinary mail when certified mail service returns unclaimed), were considered by the court in *Seeley* v. *Expert* (1971), 26 Ohio St. 2d 61, and were rejected.

My disagreement with the opinion of the majority is more basic. The court, it seems to me, is indulging in a sort of judicial "waiting for Godot." However, Godot cannot be far away. Perhaps tomorrow a traveling salesman living in Ohio, whose business has taken him out of the state three days each week for the past ten years, will have a personal injury action brought against him concerning an auto accident which occurred over four years ago. According to the majority, that action will be saved by their interpretation of R. C. 2305.15.

The court should not wait for a case so ridiculous. Instead, it should reverse the Court of Appeals, and relegate the operation of R. C. 2305.15 to those circumstances for which it was so clearly intended (if any such set of cir cumstances can now exist).